E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture and Recovery Section
TARA B. VAVERE (Cal. Bar No. 279470)
Assistant United States Attorney
Asset Forfeiture and Recovery Section
United States Courthouse, 14th Floor
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-5901
Facsimile: (213) 894-0142
E-mail: Tara.Vavere@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

ONE 2023 LAND ROVER RANGE ROVER SUV, MISCELLANEOUS LAND ROVER RANGE ROVER VEHICLE ACCESSORIES, ONE DIAMOND RING, 1.5 MILLION SHARES OF SUNDANCE STRATEGIES, INC. STOCK AND $15,000.00 HELD AS A SECURITY DEPOSIT,

Defendants.

Case No. 8:23-CV-02113

**VERIFIED COMPLAINT FOR FORFEITURE**

18 U.S.C. § 981(a)(1)(A) and (C)

[F.B.I.]

Plaintiff United States of America brings this claim against defendants One 2023 Land Rover Range Rover SUV, Miscellaneous Land Rover Range Rover Vehicle Accessories, One Diamond Ring, 1.5 Million Shares of Sundance Strategies, Inc. stock

and $15,000.00 Held as a Security Deposit (collectively, the “Defendant Property”), and alleges as follows:

JURISDICTION AND VENUE

1. This is a civil forfeiture action brought pursuant to 18 U.S.C. § 981(a)(1)(A) and (C).

2. This Court has jurisdiction over the matter under 28 U.S.C. §§ 1345 and 1355.

3. Venue lies in this district pursuant to 28 U.S.C. § 1395.

PERSONS AND ENTITIES

4. The plaintiff in this action is the United States of America.

5. The Defendant Property was seized during the execution of federal Search and Seizure warrants on June 1, 2023, at the following locations:

a. The defendant 2023 Land Rover Range Rover was seized from Benny Mor, dba Vasco Assets (“Mor”), with VIN SALK1BE79PA011048 and having Tradability, LLC as the vehicle’s registered owner, at Mor’s residence in Irvine, California.

b. The defendant Diamond Ring and the defendant Miscellaneous Land Rover Range Rover Vehicle Accessories were seized from Jasmine Bruce (“Bruce”) at her residence in Laguna Niguel, California.

c. The defendant 1.5 Million Shares of Sundance Strategies, Inc. stock was seized from Charles Schwab &Co., Inc in Omaha, Nebraska.

d. The defendant $15,000.00 held as a security deposit was seized from Parisian Management Inc. in Newport Coast, California.

6. The Defendant Property is currently in the custody of the United States Marshals Service in this District, where it shall remain subject to this Court’s jurisdiction during the pendency of this action.

7. The interests of Mor, Bruce, Tradability, LLC, Parisian Management, Inc, Victim B.D. and Amadou Diallo (“Diallo”) may be affected by these proceedings.

BASIS FOR FORFEITURE

The Fraudulent Scheme Involving Virtual Advisors and Liquide

8. On May 3, 2023, a federal grand jury sitting in the Central District of California returned an indictment charging Diallo with nineteen counts of wire fraud and two counts of transactional money laundering in connection with an alleged fraudulent scheme whereby Diallo defrauded at least eleven victim-investors out of approximately $1.8 million used to invest in Diallo's companies, Virtual Advisors and Liquide, between 2015, up through at least January 2020. On September 20, 2023, a first superseding indictment was returned in the case, which charged Diallo with, among other things, one count of violating the Foreign Corrupt Practices Act in relation to the Virtual Advisors and Liquide fraud scheme. See United States v. Amadou Diallo, Case No. 8:23-cr-00054-JWH.

9. To induce victim-investors to invest in his companies, Diallo falsely represented himself to be a self-made millionaire and successful entrepreneur who had become wealthy working in e-commerce, information technology, and other industries. To signal to the victim-investors his success as a businessman, Diallo flaunted his ownership of luxury homes and vehicles, falsely claimed that he owned them debt-free, and at times falsely claimed to be one of the richest men in Africa.

10. In fact, Diallo used the majority of the victim-investors' funds on personal expenses, including rent payments on his luxury home; luxury vehicles, including payments for two Rolls-Royces and a Ferrari; clothing and other personal shopping and dining; fitness club memberships and spas; and Amazon.com purchases. Additionally, unbeknownst to the victim-investors, Diallo used victim-investor funds to lavishly host and entertain foreign government officials from Senegal.

11. Throughout the scheme, victim-investors of Virtual Advisors and Liquide communicated with Diallo via in-person meetings, email, text message, and WhatsApp. Diallo also hosted potential victim-investors at the luxury homes he lived in when soliciting them to invest in his companies.

12. According to bank account records for the accounts used by Diallo in the Virtual Advisors and Liquide fraudulent schemes, the last deposits of victim-investor funds into those accounts occurred in or around September 2019. After the deposits of victim-investor funds into those accounts stopped, the account balances dropped below zero before the accounts were closed in or around October 2019. Diallo continued placating his victim-investors until in or around January 2020.

13. In September 2020, Federal Bureau of Investigation (the "FBI") agents interviewed Diallo regarding the Virtual Advisors and Liquide schemes. In June 2021, FBI agents served Diallo with a target letter informing him that he was the target of a federal criminal investigation involving allegations of wire fraud.

The Fraudulent Scheme Involving Teleinstruction

14. In or about January 2021, Diallo began soliciting victim-investors for his new business, Teleinstruction, which Diallo had incorporated in California in February 2021. Diallo was introduced to a group of physicians who met virtually to discuss investment opportunities. Diallo described himself in these virtual meetings as a wealthy tech entrepreneur who was developing a company called Teleinstruction that was similar to Zoom, but for physicians. The purported goal was for Teleinstruction to function as a remote medical monitoring service, providing remote access to physicians. The victims believed the investments they paid to Diallo were for the purchase of shares in Teleinstruction, as described in Diallo's purported investment contract.

15. According to bank records with respect to the bank accounts Diallo used in the Teleinstruction fraud scheme, in February and March 2021, two separate victim-investors wired a total of $150,000.00 to a Citibank checking account held in the name of Teleinstruction, LLC, on which Diallo was the sole signatory. Prior to the wire transfers made by the victim-investors, the account balance was $16,246.64. After the wire transfers from the victim-investors were made in March 2021, Diallo initiated a

series of withdrawals and Zelle[1] transfers to other bank accounts that Diallo controlled, leaving the Teleinstruction account with a balance of $5.00. Diallo spent the majority of the $150,000.00 of victim investments on personal expenses and to fund Diallo's lavish lifestyle.

The Fraudulent Scheme Involving Sundance Strategies

16. In or about May 2021, Diallo incorporated Tradability, LLC in Wyoming. Diallo opened multiple bank accounts in the name of "Tradability, LLC," including a checking account at Citibank (the "Tradability Citi 2923 account"), opened in October 2021 and a Charles Schwab brokerage account (the "Tradability Schwab 552 account"), opened in February of 2022, and both accounts listed Diallo as the Chief Executive Officer and the Managing Member of Tradability. Tradability hired one of Diallo's friends, Jason Woodland ("Woodland") as a paid consultant.

17. In or about September of 2021, Woodland introduced Diallo to the Chairman of Sundance Strategies, Inc. ("Sundance"), a company located in Provo, Utah that bundles and sells existing life insurance policies to third parties. Diallo claimed to have been a leading expert at IBM, and to have the ability "with only a few key strokes" to get an entity to the top of Google search results. Diallo claimed to have access to IBM's "secret formulas," and that he was a "world expert" who could help Sundance raise capital for bonds. Ultimately, Diallo offered to raise funds for Sundance by selling Non-fungible tokens ("NFTs"), backed by existing life insurance policies. Diallo told Sundance that he could quickly raise $100 million to $200 million for Sundance because demand for NFTs was so high. Diallo said that he was part of an association of investors and that he personally had the ability to cause his contacts from this association to invest $50 million to $100 million in Sundance with only one telephone call.

/ / /

[1] Zelle is a United States-based digital payments network run by a private financial services company called Early Warning Services. The Zelle service enables individuals to electronically transfer money from their bank account to another registered user's bank account (within the United States) using a mobile device or the website of a participating banking institution.

18. In or around January 2022, Sundance entered into a marketing and consulting services contract with Tradability.[2] Sundance paid Diallo $100,000 for an advance on services, via wire transfer to Diallo's Tradability Citi 2923 account. Diallo asked Sundance for an additional $400,000, so the parties included in their contract documentation for a loan from Sundance to Tradability in the form of a promissory note. The note provided for a $400,000 loan to Tradability once Tradability accomplished certain milestones outlined in the marketing and consulting services contract related to Tradability raising funds for Sundance. (However, Diallo/Tradability failed to perform on the contract, so the loan was never funded). Sundance also committed to issuing shares of Sundance stock to Tradability upon performance of the agreement by Tradability. However, Diallo asked Sundance to give Tradability a percentage of the shares[3] upfront as an incentive to Diallo's team to perform. Diallo claimed this would accelerate the performance of the contract with Sundance. Sundance agreed and, on or about March 7, 2022, transferred 1.5 million shares of Sundance stock to Diallo's Tradability Schwab 552 account (i.e., the defendant 1.5 Million Shares of Sundance Strategies, Inc. stock).

19. In or around February 2022, the Sundance Chairman traveled to Orange County, California, where Diallo and Woodland took him out to dinner in Laguna Beach, with Diallo driving an electric Mercedes-Benz that purportedly cost hundreds of thousands of dollars. Diallo pointed out his home on one of the hills in Laguna Beach and told the Sundance Chairman that Diallo had Rolls-Royces parked in the garage of the home.

---

[2] The contract listed the business address for Tradability as 5000 Birch Street, Suite 3000, Newport Beach, CA 92660. This is the same address listed on the Articles of Incorporation for Diallo's other company, Teleinstruction.

[3] At the time of transfer to Tradability, Sundance shares were publicly traded on the Over-the-Counter ("OTC") market under the ticker symbol SUND. OTC securities are securities that are not listed on a major exchange in the United States (usually because many are smaller companies and do not meet the requirements to be listed on a major exchange) and are instead traded via a broker-dealer network. At the time of the transfer of shares to Tradability, Sundance shares were trading at $6.70 per share.

20. After Sundance paid Tradability and transferred the shares of Sundance Stock, Diallo essentially disappeared, and Tradability never developed or sold any NFTs for Sundance. Diallo placated Sundance by claiming that he was in the process of purchasing one of the "largest registered investment advisor ('RIA') firms in the country," claiming that this RIA alone could raise hundreds of millions of dollars per year and had billions of dollars under management. Diallo insisted his purchase of this RIA would expedite the Sundance deal coming to fruition because he had personal discretion over a certain percentage of the RIA's funds and could direct the RIA agents and their clients to invest in Sundance.

21. In or about March of 2023, Sundance requested that Diallo and Tradability return the $100,000 and the 1.5 million shares of Sundance stock due to Tradability having not performed any of its obligations, but Diallo refused and blamed their nonperformance on "tough markets," claiming that Tradability had earned the funds and the shares with Diallo's marketing efforts. In about May of 2023, Diallo told Sundance that the RIA was "working" and would "assimilate the RIA to assist with the Sundance deal." Diallo further claimed that he was working on a big deal to purchase a bank, and that once that deal was completed, Tradability would be able to perform its obligations to Sundance. Diallo never told Sundance that he was under investigation by the FBI.

The Fraudulent Scheme Involving Claraphi Advisory Network and Victim B.D.

22. In or about March 2022, Woodland introduced Diallo to victim B.D. Diallo claimed to be a successful businessman who owned a number of companies and had relationships with celebrities. Diallo claimed that Tradability was in the process of acquiring an RIA named "Claraphi," needed $4,000,000 to purchase the interest of one of the major shareholders of Claraphi, and planned to combine multiple companies to create one large financial services company. To facilitate Tradability's purchase of Claraphi shares, B.D. made a short-term "Bridge" loan to Diallo in March 2022, secured by a convertible promissory note that had a maturity date of six months and guaranteed ten percent interest.

23. When the note matured, Diallo did not repay the loan but opted to take a six month extension. The six month extension expired in March, 2023, at which time full repayment of the loan was due. Diallo never repaid the loan and blamed this failure on a shareholder lawsuit and certain personnel who had defected from Claraphi.

24. In fact, Diallo had entered into an agreement in or about March of 2022 with the then owner of financial services company, Pomegranate Holdings, LLC ("Pomegranate") to purchase one of its wholly owned subsidiaries, Claraphi Advisory Network ("Claraphi"). Tradability was to acquire Claraphi for $3 million dollars. Diallo made a $1 million payment to Pomegranate at signing in March, 2022, and per the terms of the contract, was required to pay the remaining $2 million in four $500,000 payments, plus interest, spread over the course of the next year. To show proof of his ability to complete the deal with Pomegranate, Diallo provided documentation from the Tradability Schwab 552 account, reflecting that the Sundance Strategies shares had a value of over $10 million. Diallo made the first installment payment of $506,265.59 to Pomegranate in June of 2022, but defaulted on the remaining $1.5 million, plus interest due on the sale of Claraphi to Tradability. Instead of completing the deal with Pomegranate, Diallo again spent the majority of victim B.D.'s investment funds on personal expenses and to maintain his lavish lifestyle.

25. Bank account records associated with the accounts used by Diallo in the scheme perpetrated against Sundance and victim B.D. reflect the following:

a. On or about January 6, 2022, the $100,000 payment from Sundance was wired into the Tradability Citi 2923 account, related to the agreement between Sundance and Tradability. The account balance prior to the wire transfer from Sundance was $30,494.66. On or about January 11, 2022, Diallo wrote a check from the account in the amount of $63,058.62 to Redline Acceptance related to Diallo's acquisition of a 2022 Mercedes-Benz EQS 450 automobile.

b. On or about March 15, 2022, the $4 million from victim B.D. was wired into the Tradability Citi 2923 account related to the short-term loan from B.D. to

Diallo for the purchase of Claraphi. The wire transfer instructions stated in the memo field, "RIA Bridge Loan." The account balance prior to the wire transfer from Victim B.D. was $8.47.

26. The majority of the $4 million that was intended for the purchase of Claraphi was used by Diallo for personal expenses and/or transferred to other bank accounts held by Diallo, including the following:

a. On or about April 12, 2022, Diallo used approximately $237,000 in funds from the Tradability Citi 2923 account to purchase a 2021 Rolls-Royce Phantom automobile from Orange County British Motorcars, LLC in Irvine, California.

b. On or about April 26, 2022, Diallo used $195,000.00 in funds from the Tradability Citi 2923 account to pre-pay one years' rent plus a security deposit for Diallo's personal residence in Laguna Niguel, California, to Parisian Management Inc. in Newport Coast, California (i.e., the Defendant $15,000.00 Held as a Security Deposit).

c. On or about June 21, 2022, Diallo used $170,000 in funds from the Tradability Citi 2923 account to purchase a 2021 Ferrari SF90ST from BBB Orange County, LLC, DBA Ferrari & Maserati of Newport Beach in Newport Beach, California.

d. On or about July 7, 2022, Diallo used $12,499 in funds from the Tradability Citi 2923 account to purchase jewelry at Harry Winston in Costa Mesa, California, including the defendant Diamond Ring.

e. On or about July 13, 2022, Diallo transferred approximately $517,500 from the Tradability Citi 2923 account to a Wells Fargo savings account in the name of Tradability LLC, with Diallo as the sole Signatory (the "Tradability WF 4158" account). At about the same time, Diallo also opened a checking account at Wells Fargo in the name of Tradability, LLC with Diallo as the sole signatory (the "Tradability WF 8552" account).

f. On or about August 1, 2022, Diallo transferred $260,000 from the Tradability WF 4158 account to the Tradability WF 8552 account. The account balance in the Tradability WF 8552 account prior to the transfer was $10,000.06.

g. On or about August 1, 2022, Diallo purchased a 2023 Land Rover Range Rover automobile, with approximately $230,215.24 in funds from the Tradability WF 8552 account from Anaheim Hills Jaguar Land Rover in Anaheim, California (i.e., the Defendant One 2023 Land Rover Range Rover and the Defendant Miscellaneous Land Rover Range Rover Vehicle Accessories).

27. Throughout the period of January to August 2022, nearly all the funds deposited into the Citibank and Wells Fargo Tradability accounts that were used to purchase the Defendant Property are traceable to the deposits from Sundance and victim B.D. Furthermore, Diallo used the victim's funds on personal medical expenses, furniture, and lease payments made on the Rolls Royce Phantom and the Ferrari.

FIRST CLAIM FOR RELIEF

28. Based on the facts set forth above, plaintiff alleges that the Defendant Property constitutes or is derived from proceeds traceable to violations of 18 U.S.C. § 1343 (wire fraud), which is a specified unlawful activity as defined in 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1). The Defendant Property is therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C).

SECOND CLAIM FOR RELIEF

29. Based on the facts set forth above, plaintiff alleges that the Defendant Property constitutes property involved in multiple transactions or attempted transactions in violation of 18 U.S.C. § 1956(a)(1)(A)(i) or (a)(1)(B)(i), or property traceable to such property, with the specified unlawful activity being violations of 18 U.S.C. § 1343. The Defendant Property is therefore subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

WHEREFORE, plaintiff United States of America prays:

(a) that due process issue to enforce the forfeiture of the Defendant Property;

(b) that due notice be given to all interested parties to appear and show cause why forfeiture should not be decreed;

/ / /

(c) that this Court decree forfeiture of the Defendant Property to the United States of America for disposition according to law; and

(d) for such other and further relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Dated: November 9, 2023

E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
JONATHAN GALATZAN
Assistant United States Attorney
Chief, Asset Forfeiture and Recovery Section

*/s/ Tara B. Vavere*
TARA B. VAVERE
Assistant United States Attorney
Asset Forfeiture and Recovery Section

Attorneys for Plaintiff
United States of America

**VERIFICATION**

I, Julie Sawyer, hereby declare that:

1. I am a Special Agent with the Federal Bureau of Investigation and the case agent for the forfeiture matter entitled *United States of America v. One 2023 Land Rover Range Rover SUV, Miscellaneous Land Rover Range Rover Vehicle Accessories, One Diamond Ring, 1.5 Million Shares of Sundance Strategies, Inc. stock and $15,000.00 Held as a Security Deposit*.

2. I have read the above Verified Complaint for Forfeiture and know its contents. It is based upon my own personal knowledge and reports provided to me by other law enforcement agents.

3. Everything contained in the Complaint is true and correct, to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on November 9, 2023 in Santa Ana, California.

Julie Sawyer

JULIE SAWYER